RON BENDER (SBN 143364)
J.P. FRITZ (SBN 245240)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbrb.com, jpf@lnbrb.com

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**(RIVERSIDE DIVISION)**

| | |
|---|---|
| In re:<br><br>CONSTRUCTION LABOR, LLC, a California limited liability company,<br><br>Debtor. | Case No. 6:09-bk-40532-TD<br><br>Chapter 11<br><br>**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER FOR JOINT ADMINISTRATION OF CASES; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF MASON BAILEY IN SUPPORT THEREOF**<br><br><u>Hearing (Bankruptcy Judge Presiding)</u><br>Date: January 15, 2010<br>Time: 10:00 a.m.<br>Place: 255 East Temple Street, Crtrm. 1345<br>Los Angeles, California, 90012<br><br><u>Hearing (Videoconference Location)</u><br>Date: January 15, 2010<br>Time: 10:00 a.m.<br>Place: 3420 Twelfth Street, Crtrm. 303<br>Riverside, California, 92501 |

**SUMMARY**

Pursuant to Local Bankruptcy Rule 2081-1(a)(12) and 11 U.S.C.§ 105 and Rule 1015 of the Federal Rules of Bankruptcy Procedure, Construction Labor, LLC ("CL"), the debtor and debtor in possession in the above-referenced Chapter 11 case, hereby moves, on an emergency basis (the "Motion"), for the entry of an order for joint administration of this case with that of Construction Machine Services, LLC ("CMS"), case no. 6:10-bk-10877-TD, and Max Equipment Rental, LLC ("MAX" and collectively with CL and CMS, the "Debtors"), case no. 6:10-bk-10880-TD

CL owns construction equipment ranging from heavy machinery to handheld construction tools. CL leases this equipment and machinery to CMS. MAX employs personnel and leases the personnel to CMS. CMS rents construction equipment and handheld tools to customers for short periods of time. The proceeds from CMS's rental of equipment and machinery are used to pay the equipment leases to CL, which in turn uses those proceeds to pay its secured lenders. Similarly, CMS's proceeds are used to pay the employment leases to MAX, which in turn uses those proceeds to make payroll to its employees.

The three companies work together as one collective business enterprise. Furthermore, all three Debtors have the same management and ownership. Mason Bailey and Robert McDaris, who own 80% and 20%, respectively, of each of the three Debtors, are in charge of the Debtors' daily operations and business affairs. Based on the foregoing, the Debtors believe that joint administration of their cases (the "Cases") is both appropriate and necessary.

Joint administration will avoid duplicative expenses and will ensure that creditors in the Cases will receive appropriate notice of pertinent matters. In addition, the Debtors believe that joint administration of the Cases, including the use of a single pleadings docket, the combining of notices to creditors of the different estates, and the joint handling of purely administrative matters will aid in expediting the Cases and rendering the process less costly, without prejudicing the substantive rights of any creditor.

/ / /

The Debtors further believe that joint administration of the Cases will assist the Office of the United States Trustee in forming one (1) committee of unsecured creditors, which should further reduce costs to the estates. Additionally, the joint administration of the Cases will eliminate the need for the Debtors to file identical motions and orders in each of the Cases when seeking relief that is common to all three Debtors, will avoid the further waste of judicial resources related to, for example, the docketing of identical motions, declarations, and orders in the each of the Cases, and will permit the Debtors' estates to avoid the substantial copy costs and service costs associated with filing and serving motions and other pleadings in the Cases that seek collective relief for the Debtors. As a result, the Debtors hereby respectfully submit that cause exists to grant the Motion.

## ADDITIONAL INFORMATION

The Motion is based on this Motion, the attached Memorandum of Points and Authorities and Declaration of Mason Bailey (the "Bailey Declaration"), the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other admissible evidence properly presented to the Court.

In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court, CL served by overnight mail a copy of this Motion and all supportive papers (including notice of the hearing) upon the Office of the United States Trustee, purportedly secured creditors, the twenty largest unsecured creditors in each of the Cases, and all of those parties who have requested special notice.

**WHEREFORE**, CL respectfully requests that this Court enter an order:

(a) affirming the adequacy of the notice given;

(b) authorizing the joint administration of the Cases;

(c) approving the form of caption suggested by the Debtors herein; and

///

///

(d) granting such other and further relief as the Court deems just and proper.

Dated: January 13, 2010

CONSTRUCTION LABOR, LLC

By: */s/ Ron Bender*
RON BENDER
JOHN-PATRICK M. FRITZ
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**STATEMENT OF FACTS**

1. CL commenced its bankruptcy case, bearing case number 6:09-bk-40532-TD, by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on December 16, 2009. CL continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. CMS and MAX each separately commenced bankruptcy cases, bearing case numbers 6:10-bk-10877-TD and 6:10-bk-10880-TD, respectively, by filing voluntary petitions under Chapter 11 of the Bankruptcy Code on January 12, 2010. CMS and MAX continue to operate their businesses, manage their financial affairs and operate their bankruptcy estates as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. MAX was formed in 2000, and CL and CMS were formed in 2006. CL owns construction equipment ranging from heavy machinery to handheld construction tools. CL leases this equipment and machinery to CMS. MAX employs personnel and leases the personnel to CMS. CMS utilizes employees from MAX to rent CL's construction equipment and handheld tools to customers for short periods of time. MAX also has a wholly-owned, Mexican subsidiary, Max Equipos S de RL de CV ("Equipos"), which rents construction equipment in Mexico.

3. The Debtors share the same management and ownership. Mason Bailey and Robert McDaris, who own 80% and 20%, respectively, of each of the three Debtors, and are in charge of all of the Debtors' daily operations and business affairs.

4. CL's primary assets are its equipment and machinery, which are the alleged collateral of a number of secured lenders, whose loans total approximately $10 million. CL owns and maintains the equipment and machinery and makes payments on the secured debt to

the secured lenders. The equipment and machinery total approximately 431 pieces in California and 80 pieces in Mexico. The equipment and machinery include a substantial variety of pieces, including aerial equipment, air equipment, compaction and paving equipment, concrete and masonry equipment, earthmoving equipment, electrical tools and equipment, general equipment, lawn and garden equipment, material handling equipment, pumping equipment, and trucks and trailers. This equipment and machinery is from the industry's largest quality manufacturers, including Caterpillar, John Deere, CASE, Bobcat, and JLG. MAX employs approximately 40 employees. CMS operates rental facilities in Perris, California and in Oceanside, California. Equipos operates rental facilities in Mexicali, Mexico, and Tijuana, Mexico.

5. CMS's locations are strategically placed near United States military bases, such as Camp Pendleton, Point Loma Naval Submarine Base, the San Diego Naval Station, and the Marine Corp Air Station at Miramar. These military bases have supplied and continue to supply construction jobs to many of CMS's customers, providing a steady clientele base for CMS.

6. The Debtors prospered and expanded throughout Southern California and Mexico until 2007 when the construction market froze. As the country's recession worsened, the construction industry in the southwestern United States was impacted severely. Consequently, the Debtors' volume of business dropped and – in order to remain competitive in its industry – the Debtors were forced to lower their rental rates, which ultimately lead to a decrease in the Debtors' operating revenue. From the third quarter of 2008 until fourth quarter 2009, the Debtors took steps to reduce their expenses, maintain their rental rates, and streamline their business, which included the successful restructuring of several loans with secured lenders.

7. However, unlike certain other secured lenders, GE Capital Corp. ("GECC") refused to work with CL to restructure its loans. On September 16, 2009, GECC repossessed the equipment secured by GECC's loan (the "Repossessed Equipment") and put it up for auction

with Ritchie Brothers Auctioneers ("RBA"). An auction to sell the Repossessed Equipment was scheduled for October 2009, but the Repossessed Equipment was removed from the auction itinerary after CL raised concerns that its assets were being sold in a commercially unreasonable manner.

8. On December 17 and 18, 2009, another auction sale of the Repossessed Equipment was scheduled to be conducted by RBA. In order to save its business, its assets, the Repossessed Equipment, continue operations, and plan an effective reorganization, CL determined that it was in the best interests of its estate to file for chapter 11 bankruptcy immediately. Because of the intertwining business structure amongst CL, CMS, and MAX, both CMS and MAX ultimately determined that it was also in the best interests of their estates to file for chapter 11 bankruptcy. Together, the Debtors seek a comprehensive reorganization of their businesses, which may include a plan(s) of reorganization or sale of assets pursuant to section 363 of the Bankruptcy Code, or a combination of the two.

## II.

## DISCUSSION

The Debtors request that the Court approve the joint administration of their Cases. Rule 1015 of the *Federal Rules of Bankruptcy Procedure* (the "Bankruptcy Rules") provides that the Court may order the joint administration of cases involving a debtor and an affiliate[1] where such an order "may tend to avoid unnecessary costs and delay." Fed. R. Bankr. P. 1015(b)(4) and 1015(c). Bankruptcy Rule 1015 is designed to promote the fair and efficient administration of related cases of affiliated debtors, while ensuring that no rights of individual creditors are unduly prejudiced. See 8 Collier on Bankruptcy ¶ 1015.03 (15th Ed. 1990); In re Brookhollow Assocs., 435 F.Supp. 763, 766 (D. Mass. 1977), aff'd, 575 F.2d 1003 (1st Cir

---

[1] Under the definition of "affiliate" in the Bankruptcy Code, the Debtors are "affiliates." See 11 U.S.C. § 101(2)(A), (B).

1986) (joint administration "help[s] the bankruptcy court to administer economically and efficiently different estates with substantial interests in common"); In re H&S Transportation Co., 55 B.R. 786 (Bankr. M.D. Tenn. 1985).

Unlike substantive consolidation which pools the assets and liabilities of related entities, joint administration is merely procedural; each of the Debtors' estates herein would remain a separate legal entity and creditors' individual rights against each estate are preserved In re N.S. Garrott & Sons, 63 B.R. 189, 191 (E.D. Ark. 1986); In re Arnold, 33 B.R. 765, 767 (Bankr. E.D.N.Y. 1983).

Joint administration of the Cases is warranted and appropriate under Bankruptcy Rule 1015(b). As set forth above, the Debtors share common ownership and management. As such, the Debtors are "affiliates" as that term is defined in the Bankruptcy Code. See 11 U.S.C. § 101(2). In addition, the affairs of the Debtors are sufficiently intertwined to make joint administration of the Cases more efficient and economical than separate administration. Joint administration will greatly reduce the costs in administering the Cases, and would serve to eliminate any potential confusion and waste associated with maintaining separate dockets Moreover, joint administration would eliminate the need for filing duplicative pleadings in each of the Cases and would reduce the burden for the Clerk's Office in administering the Cases.

Further, the Debtors believe that there would be no material prejudice to any creditor if the Cases are jointly administered. Indeed, creditors of the Debtors' estates will benefit from the reduction of administrative costs and fees. Moreover, to the extent any conflict between the estates herein arises, the Court may take further steps to modify its order of joint administration to eliminate any such conflict. In light of the foregoing, the Debtors respectfully submit that the Court should exercise its discretion under Bankruptcy Rule 1015(c) and order joint administration of the Cases.

As the entry of an order granting the Motion will eliminate the further need for the Debtors to file identical motions and orders in each of the Cases when seeking relief that is common to all of the Debtors, joint administration will avoid the further waste of judicial

resources related to, for example, the docketing of identical motions, declarations and orders in each of the Cases, and will permit the avoidance of substantial copy costs and service costs to the estates associated with the filing and serving of motions and other pleadings in each of the Cases. Based on the foregoing, the Debtors hereby respectfully submit that cause exists to grant the Motion on an emergency basis.

In the event the Court orders the joint administration of the Cases, the Debtors respectfully suggest that the following caption be approved and that the Construction Labor, LLC case be used as the lead case:

| | |
|---|---|
| In re:<br><br>CONSTRUCTION LABOR, LLC,<br><br>Debtor. | ) Lead Case No.: 6:09-bk-40532-TD<br>)<br>) Jointly administered with:<br>) 6:10-bk-10877-TD (Construction Machine<br>) Services, LLC) and<br>) 6:10-bk-10880-TD (Max Equipment Rental.<br>) LLC)<br>) |
| In re:<br><br>CONSTRUCTION MACHINE SERVICES, LLC,<br><br>Debtor. | ) Chapter 11 Cases<br>)<br>) Hearing (Bankruptcy Judge Presiding)<br>) Date:<br>) Time: |
| In re:<br><br>MAX EQUIPMENT RENTAL, LLC,<br><br>Debtor. | ) Place: 255 East Temple Street, Crtrm. 1345<br>) Los Angeles, California, 90012<br>)<br>) Hearing (Videoconference Location)<br>) Date:<br>) Time:<br>) Place: 3420 Twelfth Street, Crtrm. 303<br>Riverside, California, 92501 |
| ☐ Affects All Debtors<br><br>☐ Affects Construction Labor, LLC<br><br>☐ Affects Construction Machine Services, LLC<br><br>☐ Affects Max Equipment Rental, LLC | |

///

///

## III.

## CONCLUSION

Based on the foregoing, CL submits that approval by this Court of the Motion is in the best interests of all three of the Debtors' estates and respectfully requests that the Court enter an order:

(a) affirming the adequacy of the notice given;

(b) authorizing the joint administration of the Cases;

(c) approving the form of caption suggested by the Debtors herein; and

(d) granting such other and further relief as the Court deems just and proper.

Dated: January 13, 2010

CONSTRUCTION LABOR, LLC

By: */s/ Ron Bender*
RON BENDER
JOHN-PATRICK M. FRITZ
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**DECLARATION OF MASON BAILEY**

I, MASON BAILEY hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2. I am the Managing Member and 80% owner of Construction Labor, LLC ("CL"), Construction Machine Services, LLC ("CMS"), and Max Equipment Rental, LLC ("MAX" and collectively with CL and CMS, the "Debtors").

A. Case Background and Description of the Debtors' Businesses.

3. I caused CL to commence its bankruptcy case, bearing case number 6:09-bk-40532-TD, by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on December 16, 2009 (the "CL Petition Date"). CL continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. I caused CMS and MAX each separately to commence bankruptcy cases, bearing case numbers 6:10-bk-10877-TD and 6:10-bk-10880-TD, respectively, by filing voluntary petitions under Chapter 11 of the Bankruptcy Code on January 12, 2010 (the "Petition Date"). CMS and MAX continue to operate their businesses, manage their financial affairs and operate their bankruptcy estates as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. MAX was formed in 2000, and CL and CMS were formed in 2006. CL owns construction equipment ranging from heavy machinery to handheld construction tools. CL leases this equipment and machinery to CMS. MAX employs personnel and leases the personnel to CMS. CMS utilizes employees from MAX to rent CL's construction equipment and machinery to customers for short periods of time. MAX also has a wholly-owned, Mexican subsidiary, Max Equipos S de RL de CV ("Equipos"), which rents construction equipment in Mexico.

5. The Debtors share the same management and ownership. I and Robert McDaris ("McDaris"), own 80% and 20%, respectively, of each of the three Debtors, and we are in charge of all of the Debtors' daily operations and business affairs.

6. CL's primary assets are its equipment and machinery, which are the alleged collateral of a number of secured lenders, whose loans total approximately $10 million. CL owns and maintains the equipment and machinery and makes payments on the secured debt to the Secured Lenders. The equipment and machinery total approximately 431 pieces in California and 80 pieces in Mexico. The equipment and machinery include a great variety of pieces, including aerial equipment, air equipment, compaction and paving equipment, concrete and masonry equipment, earthmoving equipment, electrical tools and equipment, general equipment, lawn and garden equipment, material handling equipment, pumping equipment, and trucks and trailers. This equipment and machinery is from the industry's largest quality manufacturers, including Caterpillar, John Deere, CASE, Bobcat, and JLG. MAX employs approximately 40 employees, including its two insiders, McDaris and myself. CMS operates rental facilities in Perris, California, and Oceanside, California. Equipos operates rental facilities in Mexicali, Mexico, and Tijuana, Mexico.

7. CMS's locations are strategically placed near United States military bases, such as Camp Pendleton, Point Loma Naval Submarine Base, the San Diego Naval Station, and the Marine Corp Air Station at Miramar. These military bases have supplied and continue to supply construction jobs to many of CMS's customers, providing a steady clientele base for CMS.

8. The Debtors prospered and expanded throughout Southern California and Mexico until 2007 when the construction market froze. As the country's recession worsened, the construction industry in the southwestern United States was impacted severely. Consequently, the Debtors' volume of business dropped and – in order to remain competitive in

its industry – the Debtors were forced to lower their rental rates, which ultimately lead to a decrease in the Debtors' revenue. From the third quarter of 2008 until fourth quarter 2009, the Debtors took steps to reduce their expenses, maintain their rental rates, and streamline their business, which included the successful restructuring of several of the Debtors' secured loans.

9. However, unlike other secured lenders, GE Capital Corp. ("GECC") refused to work with CL to restructure its loans. On September 16, 2009, GECC repossessed the equipment secured by GECC's loan (the "Repossessed Equipment") and put it up for auction with Ritchie Brothers Auctioneers ("RBA"). An auction to sell the Repossessed Equipment was scheduled for October 2009, but the Repossessed Equipment was removed from the auction itinerary after CL raised concerns that its assets were being sold in a commercially unreasonable manner.

10. On December 17 and 18, 2009, another auction was scheduled to be conducted by RBA, and the Repossessed Equipment was scheduled for sale. In order to save its business, its assets, the Repossessed Equipment, continue operations, and plan an effective reorganization, I determined that it was in the best interests of CL's estate to file for chapter 11 bankruptcy immediately. Because of the intertwining business structure amongst CL, CMS, and MAX, both I determined that it was also in the best interests of CMS's and MAX's estates to file for chapter 11 bankruptcy. Together, the Debtors seek a comprehensive reorganization of their businesses, which may include a plan(s) of reorganization or asset sales pursuant to section 363 of the Bankruptcy Code, or a combination of the two.

B. Joint Administration.

11. I believe that joint administration of the Cases will be more efficient and economical than separate administration. Joint administration will greatly reduce the costs in administering the Cases, and would serve to eliminate any potential confusion and waste

associated with maintaining separate dockets. Moreover, joint administration would eliminate the need for filing duplicative pleadings in each of the Cases and would reduce the burden for the Clerk's Office in administering the Cases.

12. I believe that there would be no material prejudice to any creditor if the Cases are jointly administered. Furthermore, I believe that creditors of the Debtors' estates will benefit from the reduction of administrative costs and fees. Based on the foregoing, I respectfully request that the Court grant the attached motion and jointly administer the three cases.

Executed this 13th day of January, at Oceanside, California.

MASON BAILEY
Declarant